**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**LEGACY CHURCH, INC.,**

**Plaintiff**

Civil Action No. _____

**v.**

**KATHYLEEN M. KUNKEL and the
STATE OF NEW MEXICO,**

**Defendants**

## PLAINTIFF'S ORIGINAL COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER, AND PERMANENT INJUNCTION

Plaintiff, Legacy Church, Inc. ("Legacy"), hereby brings this action to stop

Kathyleen M. Kunkel, in her capacity as the Secretary of the State of New Mexico Department

of Health, from violating their rights under the First Amendment to the United States

Constitution, as incorporated against the states through the Fourteenth Amendment to the United

States Constitution and alleges as follows:

## PARTIES AND JURISDICTION

1. Legacy is a New Mexico-based church that operates Christian churches in Bernalillo and
   Santa Fe Counties in the State of New Mexico, as well as Texas.

2. Kathyleen M. Kunkel is the Secretary of the State of New Mexico Department of Health.

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983
   because Legacy alleges an imminent violation of its rights under the Constitution of the
   United States.

4. The Court may declare the legal rights and obligations of the parties in this action
   pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the

Court's jurisdiction.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All Defendants are residents of and/or perform their official duties in this district. In addition, a substantial part of the events giving rise to the claims in this Complaint arose in this district, because the prohibition of mass gatherings applies throughout the entire district. Legacy resides in this district as well.

## BACKGROUND

6. On April 6, 2020, the Secretary issued a Public Health Order which did not apply "social distancing" measures to houses of worship. See Exhibit A.

7. On April 11, 2020 at approximately 5:00 p.m., the Secretary issued a new Public Health Emergency Order (4-11-20-PHO), which implemented additional restrictions on mass gatherings. *See* Exhibit B.

8. Pursuant to the 4-11-20 PHO,  the Secretary now restricts houses of worship from a gathering of more than five people within a single room or connected space, regardless of the size of that space or distancing taking place within the house of worship.

9. On April 12, 2020, Legacy plans to hold a church service celebrating the Christian holiday of Easter, commemorating the resurrection of Jesus Christ.

10. Easter is the holiest day of the year for Christians, a day for celebrating a foundational tenet of their faith.

11. In preparing for the celebration, Legacy planned to live-stream its Easter services at 9:00 a.m., 10:45 a.m., and 12:30 p.m.

12. Legacy plans to hold each service with a worship team, band, pastor, and assistant of approximately twelve to fourteen people.

13. Additionally, the church uses a technical staff who assists in the livestreaming of the services.

14. The technical staff itself is about sixteen people.

15. Legacy's building from which it will broadcast is an auditorium that can accommodate 2,500 people.

16. If the 4-11-20 PHO applied to houses of worship as it does to commercial retailors limiting customers to 20% of the number allowed per the fire code, Legacy could permit hundreds of people inside.

17. As planned, Legacy only intends to have approximately thirty people inside its building on Easter Sunday, all of whom are assisting in the service.

18. Legacy has asked all of its congregation to join them online.

19. More than thirteen thousand people worshipped with Legacy through the livestreaming of their service on April 5, 2020, Palm Sunday.

20. Legacy plans to continue live-streaming its Sunday services after Easter Sunday, to continue its free exercise of its faith, to worship God, and to provide succor to its congregation during this difficult time.

## FIRST CAUSE OF ACTION
### The Free Exercise Clause of the First Amendment to the U.S. Constitution

21. Paragraphs 1 through 20 are hereby incorporated as if set forth fully herein.

22. The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be

applied by the courts … [such as the] freedom of worship and assembly."). The Free

Exercise Clause was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S.

296 (1940).

23. As the Supreme Court has noted, "a law burdening religious practice that is not neutral or

not of general application must undergo the most rigorous of scrutiny." *Church of the*

*Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

24. Defendants prohibit a house of worship from gathering together with more than five

people and did so with less than sixteen (16) hours notice from Easter Sunday. The 4-11-

20 PHO is understood to be in place through at least April 30, 2020.

25. "[T]he minimum requirement of neutrality is that a law not discriminate on its face." *Id.*

at 533.

26. Defendants' restrictions specifically target houses of worship, including Legacy, and thus

are not neutral on its face.

27. Government action is not generally applicable if its prohibitions substantially

underinclude non-religiously motivated conduct that might endanger the same

governmental interest that the law is designed to protect. *Id*. at 542-46.

28. Defendants' restrictions of houses of worship is not generally applicable.

29. Entities not subject to these restrictions, among others, include media services,

automobile repair facilities, real estate services, and hardware stores.

30.  Defendants' mandate is not narrowly tailored because the prohibition of six or more

people is absolute, not accounting for services complying with the same restrictions as

those for "retail space", and thus services that can satisfy the public health concerns to

which the Defendants direct their efforts.

31. Requiring Plaintiff to abstain from gathering at it worship service, which requires several dozen people in a building designed for thousands, violates Plaintiff's constitutional right to free exercise of its religion.

## SECOND CAUSE OF ACTION

### The Freedom of Assembly Clause of the First Amendment to the U.S. Constitution

32. Plaintiff incorporates Paragraph 1-31 as if set forth fully herein.

33. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

34. "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

35. By denying Plaintiff the ability to have more than five people present in their house of worship, Defendants violate the Freedom of Assembly Clause. Defendants cannot meet the no-less restrictive means test. The Secretary's social distancing guidelines for "retail space" are appropriate to limit the spread of COVID-19. Legacy can comply with those same "retail space" restrictions. Imposing more restrictive requirements that target houses of worship is not the least restrictive means of achieving Defendants' public safety goal.

36. Requiring Plaintiff to abstain from gathering in a group of more than five people, despite substantial modifications to satisfy the public health interests at stake, e.g. prohibiting

church members' in-person attendance, violates Plaintiff's constitutional right to peaceably assemble.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests this Court enter an Order:

a.  Declaring that Defendants have unlawfully burdened Plaintiff's religious free exercise rights in violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution;

b.  Declaring that Defendants have unlawfully burdened Plaintiff's right to peaceably assemble in violation of the Freedom of Assembly Clause of the First Amendment to the U.S. Constitution;

c.  Temporarily and permanently enjoining Defendants from prohibiting Plaintiff from physically gathering in its house of worship;

d.  Awarding Plaintiff costs and reasonable attorneys' fees and expenses; and

e.  Granting Plaintiff all such other and further relief as the Court deems just and proper.

Dated: April 11, 2020                                Respectfully submitted,

                                                     THE BARNETT LAW FIRM, P.A.

                                                     */s/ Jordy L. Stern*
                                                     Jordy L. Stern
                                                     Colin L. Hunter
                                                     1905 Wyoming Blvd. NE
                                                     Albuquerque, New Mexico 87112
                                                     Phone: (505) 275-3200
                                                     jordy@theblf.com
                                                     colin@theblf.com

                                                     *Attorneys for Legacy Church, Inc.*



MICHELLE LUJAN GRISHAM
GOVERNOR

**NEW MEXICO**
**DEPARTMENT OF**
**HEALTH**

KATHYLEEN M. KUNKEL
CABINET SECRETARY

**PUBLIC HEALTH ORDER**
**NEW MEXICO DEPARTMENT OF HEALTH**
**CABINET SECRETARY KATHYLEEN M. KUNKEL**

**APRIL 6, 2020**

**Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending the March 23, 2020 Public Health Emergency Order Closing All Businesses and Non-Profit Entities Except for those Deemed Essential and Providing Additional Restrictions on Mass Gatherings Due to COVID-19**

**PREFACE**

The purpose of this amended Public Health Emergency Order is to further restrict business operations and public gatherings to mitigate the spread of the Novel Coronavirus Disease 2019 ("COVID-19"). We have reached a crucial juncture at which stricter adherence to social distancing and self-isolation measures will be necessary to protect the integrity of our health care system against the potentially devasting effects that could result from a rapid increase in COVID-19 cases in New Mexico. **The bottom line is that all New Mexicans should be staying in their homes for all but the most essential activities and services.** When New Mexicans are not in their homes, they should strictly adhere to social distancing protocols to minimize risks. These sacrifices are the best contribution that each of us can individually make to protect the health and wellbeing of our fellow citizens and the State as a whole. In accordance with these purposes, this Order and its exceptions should be narrowly construed to encourage New Mexicans to stay in their homes for all but the most essential activities.

It is hereby **ORDERED** that:

1.      All current guidance documents and advisories issued by the Department of Health remain in effect.

2.      The following Public Health Emergency Orders remain in effect through the current Public Health Emergency and any subsequent renewals of that Public Health Emergency or until they are amended of rescinded:

      A.      March 13, 2020 Public Health Emergency Order to Temporarily Limit Nursing Home Visitation Due to COVID-19;

      B.      March 24, 2020 Public Health Emergency Order Imposing Temporary Restrictions on Non-Essential Health Care Services, Procedures, and Surgeries; Providing Guidance on those Restrictions; and Requiring a Report from Certain Health Care Providers; and

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org



      C.     March 24, 2020 Public Health Emergency Order Temporarily Regulating the Sale and Distribution of Personal Protective Equipment Due to Shortages Caused by COVID-19.

    3.     The March 23, 2020 Public Health Emergency Order Closing All Businesses and Non-Profit Entities Except for those Deemed Essential and Providing Additional Restrictions on Mass Gatherings Due to COVID-19 is hereby amended as follows:

## ORDER

**WHEREAS,** on March 11, 2020, because of the spread of the novel Coronavirus Disease 2019 ("COVID-19"), Michelle Lujan Grisham, the Governor of the State of New Mexico, declared that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked her authority under the All Hazards Emergency Management Act;

**WHEREAS,** on April 6, 2020, Governor Michelle Lujan Grisham renewed the declaration of a Public Health Emergency until April 30, 2020 due to the continued spread of COVID-19 in New Mexico;

**WHEREAS,** COVID-19 continues to spread in New Mexico and nationally. Since, Executive Order 2020-004 was issued, confirmed COVID-19 infections in New Mexico have risen to 624 and cases in the United States have increased from 1,000 confirmed cases to over 356,000 confirmed cases;

**WHEREAS,** the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents in the State due to, among other things, illness from COVID-19, illness-related absenteeism from employment (particularly among public safety and law enforcement personnel and persons engaged in activities and businesses critical to the economy and infrastructure of the State), potential displacement of persons, and closures of schools or other places of public gatheʃing;

**WHEREAS,** social distancing is the sole way New Mexicans can minimize the spread of COVID-19 and currently constitutes the most effective means of mitigating the potentially devastating impact of this pandemic in New Mexico; and

**WHEREAS,** the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -10, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

**NOW, THEREFORE, I,** Kathyleen M. Kunkel, Cabinet Secretary of the New Mexico Department of Health, in accordance with the authority vested in me by the Constitution and the Laws of the State of New Mexico, and as directed by the Governor pursuant to the full scope of her emergency powers under the All Hazard Emergency Management Act as invoked through Executive Order 2020-004, do hereby declare the current outbreak of COVID-19 a condition of public health importance as defined in the New Mexico Public Health Act, NMSA 1978, Section 24-1-2(A) as an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community, and that poses an imminent threat of substantial harm to the population of New Mexico.

The following definitions are adopted for the purposes of this Order:

Definitions: As used in this Public Health Order, the following terms shall have the meaning given to them, except where the context clearly requires otherwise:

(1) "Retail space" means an "essential business" that sells good or services directly to consumers or end-users inside its place of business, such as a grocery store or a hardware stores and includes the "essential businesses" listed in the categories below: 2(d), 2(k), 2(m), 2(n), 2(s), 2(u), and 2(v).

(2) "Essential business" means any business or non-profit entity falling within one or more of the following categories:

    a.    Health care operations including hospitals, walk-in-care health facilities, veterinary and livestock services necessary to assist in an emergency or to avoid an emergency (such as vaccinations), pharmacies, medical wholesale and distribution, home health care workers or aides for the elderly, emergency dental facilities, nursing homes, residential health care facilities, research facilities, congregate care facilities, intermediate care facilities for those with intellectual or developmental disabilities, supportive living homes, home health care providers, and medical supplies and equipment manufacturers and providers;

    b.    Homeless shelters, food banks, and other services providing care to indigent or needy populations;

    c.    Childcare facilities necessary to provide services to those workers employed by essential businesses and essential non-profit entities;

    d.    Grocery stores, supermarkets, food banks, farmers' markets and vendors who sell food, convenience stores, and other businesses that generate the majority of their revenue from the sale of canned food, dry goods, fresh fruits and vegetables, pet food, feed, and other animal supply stores, fresh meats, fish, and poultry, and any other household consumer products;

e.    Farms, ranches, and other food cultivation, processing, or packaging operations;

f.    All facilities routinely used by law enforcement personnel, first responders, firefighters, emergency management personnel, and dispatch operators;

g.    Infrastructure operations including, but not limited to, public works construction, commercial and residential construction and maintenance, airport operations, public transportation, airlines, taxis, private transportation providers, transportation network companies, water, gas, electrical, oil drilling, oil refining, natural resources extraction or mining operations, nuclear material research and enrichment, those attendant to the repair and construction of roads and highways, gas stations, solid waste collection and removal, trash and recycling collection, processing and disposal, sewer, data and internet providers, data centers, technology support operations, and telecommunications systems;

h.    Manufacturing operations involved in food processing, manufacturing agents, chemicals, fertilizer, pharmaceuticals, sanitary products, household paper products, microelectronics/semi-conductor, primary metals manufacturers, electrical equipment, appliance, and component manufacturers, and transportation equipment manufacturers;

i.    Services necessary to maintain the safety and sanitation of residences or essential businesses including security services, towing services, custodial services, plumbers, electricians, and other skilled trades;

j.    Media services including television, radio, and newspaper operations;

k.    Automobile repair facilities, bike repair facilities, and retailers who generate the majority of their revenue from the sale of automobile or bike repair products;

l.    New and used automobile dealers may sell cars through internet or other audiovisual means but they may not allow customers in showrooms;

m.    Hardware stores;

n.    Laundromats and dry cleaner services;

o.    Utilities, including their contractors, suppliers, and supportive operations, engaged in power generation, fuel supply and transmission, water and wastewater supply;

p.    Funeral homes, crematoriums and cemeteries;

q.    Banks, credit unions, insurance providers, payroll services, brokerage services, and investment management firms;

r.    Real estate services including brokers, title companies, and related services;

s.    Businesses providing mailing and shipping services, including post office boxes;

t.    Laboratories and defense and national security-related operations supporting the United States government, a contractor to the United States government, or any federal entity;

u.    Restaurants, but only for delivery or carry out and local breweries or distillers but only for carry out;

v.    Professional services, such as legal or accounting services, but only where necessary to assist in compliance with legally mandated activities; and

w.    Logistics, and also businesses that store, transport, or deliver groceries, food, materials, goods or services directly to residences, retailers, government institutions, or essential businesses. Businesses falling under this category are not permitted to provide curbside pickup services to the general public for online or telephonic orders.

(4)    "Individuals" means natural persons.

(5)    "Gathering" means any grouping together of individuals in a single connected location.

(6)    "Mass gathering" means any public or private gathering that brings together five (5) or more individuals in a single room or connected space, confined outdoor space or an open outdoor space where individuals are within six (6) feet of each other, but does not include the presence of five (5) or more individuals where those individuals regularly reside. "Mass gathering" does not include individuals congregated in a church, synagogue, mosque, or other place of worship. "Mass gathering" does not include individuals who are public officials or public employees in the course and scope of their employment.

**I HEREBY DIRECT AS FOLLOWS:**

(1) All Mass Gatherings are hereby prohibited under the powers and authority set forth in the New Mexico Public Health Act, and all regulations promulgated pursuant thereto. This prohibition does not apply to necessary operations of essential businesses.

(2) All businesses, except those entities identified as "essential businesses", are hereby directed to reduce the in-person workforce at each business or business location by 100%. "Essential businesses" may remain open provided they minimize their

operations and staff to the greatest extent possible. Further, all essential businesses shall adhere to social distancing protocol and maintain at least six-foot social distancing from other individuals, avoid person-to-person contact, and direct employees to wash their hands frequently. All essential businesses shall ensure that all surfaces are cleaned routinely.

(3) This Order requires the closure of physical office spaces, retail spaces, or other public spaces of a business and does not otherwise restrict the conduct of business operations through telecommuting or otherwise working from home in which an employee only interacts with clients or customers remotely.

(4) The maximum number of customers allowed in a "retail space" at any given time shall be equal to 20% of the maximum occupancy of the retail space, as determined by the relevant fire marshal or fire department. If customers are waiting outside of a "retail space", they must to do so in compliance with social distancing protocols including the requirement that they maintain a distance of at least six-feet from other individuals, avoid person-to-person contact.

(5) All casinos and horse racing facilities shall close during the pendency of this Order. This directive excludes those casinos operating on Tribal lands.

(6) Hotels, motels, RV parks, and other places of lodging shall not operate at more than twenty-five percent of maximum occupancy. Health care workers who are engaged in the provision of care to New Mexico residents or individuals utilizing lodging facilities for extended stays, as temporary housing, or for purposes of a quarantine or isolation period shall not be counted for purposes of determining maximum occupancy. Short-term vacation rentals, apartments, and houses are not permitted to operate except to provide housing to health care workers who reside out of state but are engaged in the provision of care to New Mexico residents.

(7) All call centers situated in New Mexico are directed to reduce their in-person workforce by 100%. This includes any call center that is part of or supports an essential business.

(8) Self-storage facilities should reduce operations to the minimum number of employees necessary to ensure public access to storage units and adequate security for storage units, including a 100% reduction in permanent on-site workforce whenever possible.

(9) This Order does not limit animal shelters, zoos, and other facilities with animal care operations from performing tasks that ensure the health and welfare of animals. Those tasks should be performed with the minimum number of employees necessary, for the minimum amount of time necessary, and with strict adherence to all social distancing protocols.

(10) The New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, the Department of the

Environment, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order.

(11) All public and private employers are required to comply with this Order and any instructions provided by State departments or agencies regarding COVID-19.

(12) In order to minimize the shortage of health care supplies and other necessary goods, grocery stores and other retailers are hereby directed to limit the sale of medications, durable medical equipment, baby formula, diapers, sanitary care products, and hygiene products to three items per individual. NMSA 1978, § 12-I0A-6 (2012).

**I FURTHER DIRECT** as follows:

(1) This Order shall be broadly disseminated in English, Spanish and other appropriate languages to the citizens of the State of New Mexico.

(2) This Order declaring restrictions based upon the existence of a condition of public health importance shall not abrogate any disease-reporting requirements set forth in the New Mexico Public Health Act.

(3) Nothing in this Order is intended to restrain or preempt local authorities from enacting more stringent restrictions than those required by the Order.

(4) This Order shall take effect at 8:00 a.m. on April 7, 2020 and remain in effect through April 30, 2020. This Order may be renewed consistent with any direction from the Governor.

**I FURTHER ADVISE the public to take the following preventive precautions:**

- <u>**New Mexico citizens should stay at home and undertake only those outings absolutely necessary for their health, safety, or welfare.**</u>
- Retailers should take appropriate action consistent with this order to reduce hoarding and ensure that all New Mexicans can purchase necessary goods.
- Avoid crowds.
- Avoid all non-essential travel including plane trips and cruise ships. Self-quarantine or self-isolate for at least fourteen days after all out-of-state travel.

ATTEST:

_Maggie Toulouse Oliver_

MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 6TH DAY OF APRIL 2020

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

_Kathyleen M. Kunkel_

KATHYLEEN M. KUNKEL
SECRETARY    OF    THE    STATE    OF    NEW
MEXICO DEPARTMENT OF HEALTH

8

EXHIBIT B



MICHELLE LUJAN GRISHAM
GOVERNOR

NEW MEXICO
DEPARTMENT OF
HEALTH

KATHYLEEN M. KUNKEL
CABINET SECRETARY

**PUBLIC HEALTH ORDER**
**NEW MEXICO DEPARTMENT OF HEALTH**
**CABINET SECRETARY KATHYLEEN M. KUNKEL**

**APRIL 11, 2020**

**Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending the March 23, 2020 and April 6, 2020 Public Health Emergency Orders Closing All Businesses and Non-Profit Entities Except for those Deemed Essential and Providing Additional Restrictions on Mass Gatherings Due to COVID-19**

**PREFACE**

The purpose of this amended Public Health Emergency Order is to further restrict business operations and public gatherings to mitigate the spread of the Novel Coronavirus Disease 2019 ("COVID-19"). We have reached a crucial juncture at which stricter adherence to social distancing and self-isolation measures will be necessary to protect the integrity of our health care system against the potentially devasting effects that could result from a rapid increase in COVID-19 cases in New Mexico. **The bottom line is that all New Mexicans should be staying in their homes for all but the most essential activities and services.** When New Mexicans are not in their homes, they should strictly adhere to social distancing protocols to minimize risks. These sacrifices are the best contribution that each of us can individually make to protect the health and wellbeing of our fellow citizens and the State as a whole. In accordance with these purposes, this Order and its exceptions should be narrowly construed to encourage New Mexicans to stay in their homes for all but the most essential activities.

It is hereby **ORDERED** that:

1.      All current guidance documents and advisories issued by the Department of Health remain in effect.

2.      The following Public Health Emergency Orders remain in effect through the current Public Health Emergency and any subsequent renewals of that Public Health Emergency or until they are amended of rescinded:

      A.      March 13, 2020 Public Health Emergency Order to Temporarily Limit Nursing Home Visitation Due to COVID-19;

      B.      March 24, 2020 Public Health Emergency Order Imposing Temporary Restrictions on Non-Essential Health Care Services, Procedures, and Surgeries; Providing Guidance on those Restrictions; and Requiring a Report from Certain Health Care Providers; and

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org



C.      March 24, 2020 Public Health Emergency Order Temporarily Regulating the Sale and Distribution of Personal Protective Equipment Due to Shortages Caused by COVID-19.

3.      The March 23, 2020 Public Health Emergency Order Closing All Businesses and Non-Profit Entities Except for those Deemed Essential and Providing Additional Restrictions on Mass Gatherings Due to COVID-19 is hereby amended as follows:

## ORDER

**WHEREAS,** on March 11, 2020, because of the spread of the novel Coronavirus Disease 2019 ("COVID-19"), Michelle Lujan Grisham, the Governor of the State of New Mexico, declared that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked her authority under the All Hazards Emergency Management Act;

**WHEREAS,** on April 6, 2020, Governor Michelle Lujan Grisham renewed the declaration of a Public Health Emergency until April 30, 2020 due to the continued spread of COVID-19 in New Mexico;

**WHEREAS,** COVID-19 continues to spread in New Mexico and nationally. Since, Executive Order 2020-004 was issued, confirmed COVID-19 infections in New Mexico have risen to 1,091 and cases in the United States have increased from 1,000 confirmed cases to over 500,000 confirmed cases;

**WHEREAS,** the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents in the State due to, among other things, illness from COVID-19, illness-related absenteeism from employment (particularly among public safety and law enforcement personnel and persons engaged in activities and businesses critical to the economy and infrastructure of the State), potential displacement of persons, and closures of schools or other places of public gatheling;

**WHEREAS,** social distancing is the sole way New Mexicans can minimize the spread of COVID-19 and currently constitutes the most effective means of mitigating the potentially devastating impact of this pandemic in New Mexico; and

**WHEREAS,** the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -10, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

**NOW, THEREFORE, I,** Kathyleen M. Kunkel, Cabinet Secretary of the New Mexico Department of Health, in accordance with the authority vested in me by the Constitution and the Laws of the State of New Mexico, and as directed by the Governor pursuant to the full scope of

her emergency powers under the All Hazard Emergency Management Act as invoked through Executive Order 2020-004, do hereby declare the current outbreak of COVID-19 a condition of public health importance as defined in the New Mexico Public Health Act, NMSA 1978, Section 24-1-2(A) as an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community, and that poses an imminent threat of substantial harm to the population of New Mexico.

The following definitions are adopted for the purposes of this Order:

Definitions: As used in this Public Health Order, the following terms shall have the meaning given to them, except where the context clearly requires otherwise:

(1) "Retail space" means an "essential business" that sells good or services directly to consumers or end-users inside its place of business, such as a grocery store or a hardware stores and includes the "essential businesses" listed in the categories below: 2(d), 2(k), 2(m), 2(n), 2(s), 2(u), and 2(v).

(2) "Essential business" means any business or non-profit entity falling within one or more of the following categories:

      a.    Health care operations including hospitals, walk-in-care health facilities, veterinary and livestock services necessary to assist in an emergency or to avoid an emergency (such as vaccinations), pharmacies, medical wholesale and distribution, home health care workers or aides for the elderly, emergency dental facilities, nursing homes, residential health care facilities, research facilities, congregate care facilities, intermediate care facilities for those with intellectual or developmental disabilities, supportive living homes, home health care providers, and medical supplies and equipment manufacturers and providers;

      b.    Homeless shelters, food banks, and other services providing care to indigent or needy populations;

      c.    Childcare facilities necessary to provide services to those workers employed by essential businesses and essential non-profit entities;

      d.    Grocery stores, supermarkets, food banks, farmers' markets and vendors who sell food, convenience stores, and other businesses that generate the majority of their revenue from the sale of canned food, dry goods, fresh fruits and vegetables, pet food, feed, and other animal supply stores, fresh meats, fish, and poultry, and any other household consumer products;

      e.    Farms, ranches, and other food cultivation, processing, or packaging operations;

f.   All facilities routinely used by law enforcement personnel, first responders, firefighters, emergency management personnel, and dispatch operators;

g.   Infrastructure operations including, but not limited to, public works construction, commercial and residential construction and maintenance, airport operations, public transportation, airlines, taxis, private transportation providers, transportation network companies, water, gas, electrical, oil drilling, oil refining, natural resources extraction or mining operations, nuclear material research and enrichment, those attendant to the repair and construction of roads and highways, gas stations, solid waste collection and removal, trash and recycling collection, processing and disposal, sewer, data and internet providers, data centers, technology support operations, and telecommunications systems;

h.   Manufacturing operations involved in food processing, manufacturing agents, chemicals, fertilizer, pharmaceuticals, sanitary products, household paper products, microelectronics/semi-conductor, primary metals manufacturers, electrical equipment, appliance, and component manufacturers, and transportation equipment manufacturers;

i.   Services necessary to maintain the safety and sanitation of residences or essential businesses including security services, towing services, custodial services, plumbers, electricians, and other skilled trades;

j.   Media services including television, radio, and newspaper operations;

k.   Automobile repair facilities, bike repair facilities, and retailers who generate the majority of their revenue from the sale of automobile or bike repair products;

l.   New and used automobile dealers may sell cars through internet or other audiovisual means but they may not allow customers in showrooms;

m.   Hardware stores;

n.   Laundromats and dry cleaner services;

o.   Utilities, including their contractors, suppliers, and supportive operations, engaged in power generation, fuel supply and transmission, water and wastewater supply;

p.   Funeral homes, crematoriums and cemeteries;

q.   Banks, credit unions, insurance providers, payroll services, brokerage services, and investment management firms;

r.    Real estate services including brokers, title companies, and related services;

s.    Businesses providing mailing and shipping services, including post office boxes;

t.    Laboratories and defense and national security-related operations supporting the United States government, a contractor to the United States government, or any federal entity;

u.    Restaurants, but only for delivery or carry out and local breweries or distillers but only for carry out;

v.    Professional services, such as legal or accounting services, but only where necessary to assist in compliance with legally mandated activities; and

w.    Logistics, and also businesses that store, transport, or deliver groceries, food, materials, goods or services directly to residences, retailers, government institutions, or essential businesses. Businesses falling under this category are not permitted to provide curbside pickup services to the general public for online or telephonic orders.

(4)    "Individuals" means natural persons.

(5)    "Gathering" means any grouping together of individuals in a single connected location.

(6)    "Mass gathering" means any public or private gathering that brings together five (5) or more individuals in a single room or connected space, confined outdoor space or an open outdoor space where individuals are within six (6) feet of each other, but does not include the presence of five (5) or more individuals where those individuals regularly reside. "Mass gathering" does not include individuals who are public officials or public employees in the course and scope of their employment.

**I HEREBY DIRECT AS FOLLOWS:**

(1) All Mass Gatherings are hereby prohibited under the powers and authority set forth in the New Mexico Public Health Act, and all regulations promulgated pursuant thereto. This prohibition does not apply to necessary operations of essential businesses. Churches, synagogues, mosques, and all other houses of worship shall adhere to this restriction, but nothing in this order is intended to preclude these faith-based institutions from holding services through audiovisual means.

(2) All businesses, except those entities identified as "essential businesses", are hereby directed to reduce the in-person workforce at each business or business location by 100%. "Essential businesses" may remain open provided they minimize their operations and staff to the greatest extent possible. Further, all essential businesses

shall adhere to social distancing protocol and maintain at least six-foot social distancing from other individuals, avoid person-to-person contact, and direct employees to wash their hands frequently. All essential businesses shall ensure that all surfaces are cleaned routinely.

(3) This Order requires the closure of physical office spaces, retail spaces, or other public spaces of a business and does not otherwise restrict the conduct of business operations through telecommuting or otherwise working from home in which an employee only interacts with clients or customers remotely.

(4) The maximum number of customers allowed in a "retail space" at any given time shall be equal to 20% of the maximum occupancy of the retail space, as determined by the relevant fire marshal or fire department. If customers are waiting outside of a "retail space", they must to do so in compliance with social distancing protocols including the requirement that they maintain a distance of at least six-feet from other individuals, avoid person-to-person contact.

(5) All casinos and horse racing facilities shall close during the pendency of this Order. This directive excludes those casinos operating on Tribal lands.

(6) Hotels, motels, RV parks, and other places of lodging shall not operate at more than twenty-five percent of maximum occupancy. Health care workers who are engaged in the provision of care to New Mexico residents or individuals utilizing lodging facilities for extended stays, as temporary housing, or for purposes of a quarantine or isolation period shall not be counted for purposes of determining maximum occupancy. Short-term vacation rentals, apartments, and houses are not permitted to operate except to provide housing to health care workers who reside out of state but are engaged in the provision of care to New Mexico residents.

(7) All call centers situated in New Mexico are directed to reduce their in-person workforce by 100%. This includes any call center that is part of or supports an essential business.

(8) Self-storage facilities should reduce operations to the minimum number of employees necessary to ensure public access to storage units and adequate security for storage units, including a 100% reduction in permanent on-site workforce whenever possible.

(9) This Order does not limit animal shelters, zoos, and other facilities with animal care operations from performing tasks that ensure the health and welfare of animals. Those tasks should be performed with the minimum number of employees necessary, for the minimum amount of time necessary, and with strict adherence to all social distancing protocols.

(10) The New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, the Department of the

Environment, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order.

(11) All public and private employers are required to comply with this Order and any instructions provided by State departments or agencies regarding COVID-19.

(12) In order to minimize the shortage of health care supplies and other necessary goods, grocery stores and other retailers are hereby directed to limit the sale of medications, durable medical equipment, baby formula, diapers, sanitary care products, and hygiene products to three items per individual. NMSA 1978, § 12-I0A-6 (2012).

**I FURTHER DIRECT** as follows:

(1) This Order shall be broadly disseminated in English, Spanish and other appropriate languages to the citizens of the State of New Mexico.

(2) This Order declaring restrictions based upon the existence of a condition of public health importance shall not abrogate any disease-reporting requirements set forth in the New Mexico Public Health Act.

(3) Nothing in this Order is intended to restrain or preempt local authorities from enacting more stringent restrictions than those required by the Order.

(4) This Order shall take effect immediately and remain in effect through April 30, 2020. This Order may be renewed consistent with any direction from the Governor.

**I FURTHER ADVISE the public to take the following preventive precautions:**

- <u>**New Mexico citizens should stay at home and undertake only those outings absolutely necessary for their health, safety, or welfare.**</u>
- Retailers should take appropriate action consistent with this order to reduce hoarding and ensure that all New Mexicans can purchase necessary goods.
- Avoid crowds.
- Avoid all non-essential travel including plane trips and cruise ships. Self-quarantine or self-isolate for at least fourteen days after all out-of-state travel.

ATTEST:



_____
MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 11TH DAY OF APRIL 2020

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

_____
KATHYLEEN M. KUNKEL
SECRETARY   OF   THE   STATE   OF   NEW
MEXICO DEPARTMENT OF HEALTH